Matter of Iannuzzi (2022 NY Slip Op 04280)

Matter of Iannuzzi

2022 NY Slip Op 04280

Decided on July 05, 2022

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 05, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
David Friedman
Lizbeth González
Martin Shulman
Bahaati E. Pitt, JJ.

Motion No. 2022-00979 Case No. 2022-00927 

[*1]In the Matter of John N. Iannuzzi, (Admitted as John Nicholas Iannuzzi) an Attorney and Counselor-at Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, John N. Iannuzzi, (OCA Atty. Registration No. 1144823), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on June 18, 1962.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Orlando Reyes, of counsel), for petitioner.
Michael S. Ross, Esq., for respondent.

Per Curiam 

Respondent John N. Iannuzzi was admitted to the practice of law in the State of New York by the First Judicial Department on June 18, 1962, under the name John Nicholas Iannuzzi. At all times relevant to this proceeding, respondent maintained a law office within the First Department.
The Attorney Grievance Committee (AGC) seeks an order, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(2) and (5), immediately suspending respondent from the practice of law until further order of this Court. The AGC submits that respondent's admissions under oath, bank records, and misappropriation of client and/or third-party funds demonstrate that respondent was in violation of Rules of Professional Conduct (22 NYCRR) rules 1.15(a) and 8.4(c). Respondent opposes.
Respondent is an 87-year-old attorney who has practiced law for approximately 60 years. Respondent is the principal of a small firm and the sole signatory for its escrow account. In February 2020, a $517.50 check originating from the escrow account was dishonored due to insufficient funds (February 2020 Incident). The check was issued in connection with respondent's representation of a client who resides in China. Respondent represents this client individually as well as three hospitals that his client owns and operates in China.
Respondent's firm formed an entity, L.R., Ltd., on his client's behalf in connection with his purchase of land in Dutchess County, New York. The client transferred funds, every three months, from his Chinese account to respondent's wife's personal account. Respondent's wife then transferred the funds to respondent's escrow account to pay taxes and a purchase money mortgage on the client's Dutchess County property.
Respondent periodically issued checks from the firm's IOLA account to make mortgage interest and principal payments on the Dutchess County property. Although the sellers/mortgagees usually presented bills within two to three weeks from maturity, they did not present the bill for the January 2020 interest payment until February 18, 2020. That bill was paid. A week later, when the February 2020 interest bill became due on February 24, 2020, only $36.33 remained in the IOLA account. As a result, the $517.50 check, issued by respondent on February 24, 2020, was returned for insufficient funds.
The bank that dishonored the check reported the incident to the Lawyers' Fund for Client Protection (Lawyers' Fund). The Lawyers' Fund subsequently notified the AGC, and the AGC commenced an investigation into respondent's conduct. The AGC requested that respondent provide an explanation for the dishonored check and produce bookkeeping records for the six-month period preceding the date of the dishonored check.
In November 2020, respondent, in a pro se response to the AGC's request, claimed that the bounced check was the result of a bank error. Respondent later [*2]retained counsel and, in April 2021, in an amended response, admitted that there was no bank error. Respondent attributed the incident to his lack of training "in the operation and maintenance of law firm IOLA/escrow accounts." He admitted that he failed to keep a proper ledger for his IOLA account and did not maintain proper individual client ledger sheets. Respondent explained that he did not understand that "allowing his fees to accumulate over time in the same account where client or third- party funds were deposited was, in fact, prohibited 'commingling of funds'."
Respondent submitted that he "did not understand the concept of misappropriation [in] the context of IOLA Account funds" and "believed that if he knew he would be receiving funds on behalf of a client he could advance legal fee payments out of funds on deposit in his IOLA account prior to his receipt of the funds of the relevant client." He conceded that he transferred funds from his operating account to the IOLA account if the balance in the latter was insufficient. Respondent reaffirmed his amended response in a deposition before the AGC in October 2021.
The AGC's investigation of the February 2020 incident led to the discovery of two other incidents that undergird its motion for respondent's immediate suspension. The first incident occurred in July 2019 while respondent represented a tenant in a residential landlord-tenant dispute. The parties agreed to a settlement which provided that the tenant would vacate the premises by a date certain in exchange for the landlord's payment of $10,000.
Respondent placed the landlord's $10,000 check into his firm's escrow account and, one day later, withdrew his $1,000 legal fee from the account. During its investigation, the Committee learned that respondent had depleted the landlord's funds such that, at one point, only $630.77 remained in the escrow account. Respondent did not receive authorization from the landlord to use the funds for his own personal use. Respondent alleged that he did not use the money for personal benefit, but rather applied the misappropriated funds for the benefit of his other clients. Respondent claimed that no client was permanently deprived of funds due to his actions. By transferring money into the escrow account a week before his client satisfied the terms of the settlement agreement, respondent paid his client the $9,000 balance that he was owed.
The third incident under investigation occurred between September and November 2020 while respondent represented P.E. in a sale of a residential property. The contract of sale designated respondent's firm as the escrow agent for the transaction. Respondent received a down payment from purchaser's counsel in the amount of $87,500 and deposited the funds into his escrow account. Respondent thereafter made electronic transfers from the escrow account to his operating account that were unrelated to the sale of the residential property. Respondent used the funds to pay the [*3]firm's expenses and/or for his personal use. At one point, the balance fell to almost $57,000, and remained below $87,500 until the closing of the transaction, by which point respondent had replaced the misappropriated funds. Respondent admits that he did not obtain the purchaser's permission to make use of the down payment prior to closing.
The AGC moves for an interim suspension of respondent pursuant to 22 NYCRR 1240.9(a)(2) and (5). Respondent's April 14, 2021, response, the bank records, and the AGC's investigation provide ample evidence that respondent intentionally converted and/or misappropriated client and third-party funds. The AGC asserts that respondent's misconduct immediately threatens the public interest and necessitates an interim suspension.
Respondent posits that he does not pose a threat to the public interest because he simply misunderstood how to properly manage his escrow account and his use of one client's money to pay another client and his advance of legal fees were "isolated situations" due to his ignorance. He has since taken a CLE class on proper escrow management.
Respondent further contends that, because of his ignorance as to the standards for Rules of Professional Conduct 1.15(a), he lacks the requisite dishonesty or venal intent necessary to establish intentional conversion under Rules of Professional Conduct rule 8.4(c). Respondent alleges that he has health issues and states that his wealth belies any allegation that his actions were motivated by financial pressure. He submits that an interim suspension would likely end his career and proffers that his impressive trial career is additional evidence that he does not pose a danger to the public.
Respondent's arguments are unavailing. 22 NYCRR 1240.9(a) provides for an interim suspension "upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest. Such a finding may be based upon: ... (2) the respondent's admission under oath to the commission of professional misconduct... or (5) other uncontroverted evidence of professional misconduct."
Furthermore, as this Court has opined, "all that is required to establish the requisite venal intent for intentional conversion under rule 8.4(c) is evidence that the attorney knowingly withdrew IOLA or escrow funds, without permission or authority, and that he used said funds for his own purposes" (Matter of Felicetti, 180 AD3d 176, 181 [1st Dept 2020] [internal quotation marks omitted]). The AGC has met its burden through the submission of respondent's deposition testimony, his April 2021 response, and his bank records. Respondent's conversion and/or misappropriation of client/third-party funds in the three matters discussed are sufficient to warrant an interim suspension (see Matter of Etheridge, 200 AD3d 52 [1st Dept 2021]; Matter of Schuman, 183 AD3d 32 [1st Dept 2020]; Matter of Baumgarten, 177 AD3d 145 [1st Dept 2019]).
We find that respondent's conduct immediately threatens [*4]the public interest. Respondent has failed to properly manage his escrow account for decades. Accordingly, the AGC's motion should be granted and respondent is suspended from the practice of law, effective immediately, and until further order of this Court.
All concur.
IT IS ORDERED that the Attorney Grievance Committee's motion is granted and respondent John N. Iannuzzi, admitted as John Nicholas Iannuzzi, is suspended from the practice of law in the State of New York pursuant to 22 NYCRR 1240.9 (a) (2) and (5), effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court, and
IT IS FURTHER ORDERED that respondent John N. Iannuzzi, admitted as John Nicholas Iannuzzi, is commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another; that respondent is forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; that respondent is forbidden to give another an opinion as to the law or its application or advice in relation thereto, all effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court, and
IT IS FURTHER ORDERED that respondent John N. Iannuzzi, admitted as John Nicholas Iannuzzi is directed to fully comply with the provisions of the Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made a part hereof, and
IT IS FURTHER ORDERED that within 20 days of the date of service of this decision, respondent John N. Iannuzzi, admitted as John Nicholas Iannuzzi, may submit a request, in writing, to this Court for a post suspension hearing (see 22 NYCRR 1240.9 [c]), and
IT IS FURTHER ORDERED that if respondent John N. Iannuzzi, admitted as John Nicholas Iannuzzi, has been issued a secure pass by the Office of Court Administration, it shall be returned to the issuing agency.
Entered: July 5, 2022